44 C.C.P.A.(Patents)

**Matter of The Application of Harry W. DIETERT and William M. Ball, III.**

**Patent Appeals No. 6243.**

United States Court of Customs and Patent Appeals.

Feb. 21, 1957.

John Howard Joynt, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for the Commissioner of Patents.

Before JOHNSON, Chief Judge, and WORLEY, RICH, and JACKSON (retired), Judges.

WORLEY, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the rejection by the Primary Examiner of claims 3, 5, 6, 8, and 9, which are the only remaining claims of appellants' application for a patent on a foundry composi-

tion. Claims 3 and 6 are typical of the appealed claims and read:

"3. A composition for inclusion in molding sands, consisting essentially of approximately four parts western bentonite and ten parts olivine flour.

"6. A molding sand, having a permeability of at least 60, an air-set compression strength of at least 24 psi and a dry compression strength of at least 239 psi and consisting essentially of approximately 85% silica sand, about 4% western bentonite, about 10% olivine flour, and sufficient moisture to plasticize the same."

The references relied on are:

Dietert 2,256,456 September 16, 1941.
Goldschmidt
 (British) 570,719 July 19, 1945.

Appellants' application relates to the preparation of molds or cores for use in the casting of metals. It has long been conventional practice to form such molds or cores of silica sand to which a small amount of clay is added as a bonding material. Appellants employ those materials, using western bentonite as the clay, and, as an additional ingredient, olivine flour. Olivine is a material occurring in nature and is a magnesium and iron silicate. In a preferred form appellants' composition may comprise approximately 85% silica sand 4% western bentonite, and 10% olivine flour.

The involved application contains a comparison of the composition just described with a similar composition using silica flour instead of olivine flour, and shows that their properties are quite similar, with the olivine composition being better in some respects. Olivine flour is said to have a further advantage over silica flour in that it eliminates substantially all risk of silicosis, a disease commonly occurring among foundry workers and resulting from the inhalation of silica dust.

The patent to Dietert discloses a molding composition comprising silica sand, montmorillonite clay and silica flour, the proportion in one specific example being 86.5% sand, 10% silica flour, and 3.5% clay.

The British patent to Goldschmidt discloses a mold for casting metal comprising comparatively coarse particles of olivine mixed with a binder which may be "a bonding clay such as certain bentonites." The surfaces of the mold which are to come into contact with the molten metal are covered with a layer of finely divided olivine which may be applied as a suspension in water or other liquid.

The Board of Appeals was of the opinion that the use of a molding composition comprising silica sand, western bentonite, and silica flour would be obvious in view of the teaching of the Dietert patent; and that it is admitted in appellants' specification that such a composition forms a part of the prior art. The board was further of the opinion that it would not require invention to replace the silica flour of such a composition by olivine flour, in view of the Goldschmidt patent, which discloses the use of olivine in a molding composition.

As above indicated, the composition specifically disclosed by the Dietert patent consists of silica sand, silica flour, and a montmorillonite clay; and that type of clay is clearly stated to be preferred and is recited in each of the claims of the patent. However, the patent specification notes that various types of clay, including western bentonite, have been used for bonding sand molds, and there is also a general statement in the specification that "clays other than non-swelling, colloidal montmorillonite" may be used in practicing the patented invention. From those statements the board concluded that the patent amounted to a disclosure of a composition consisting of silica sand, silica flour, and western bentonite.

While the Dietert patent contains broad language which, taken literally, might suggest that any clay might be used in combination with silica sand and silica flour as a molding composition, the specific teaching of the patent clearly leads away from the use of western

bentonite (which is referred to in the patent as Wyoming bentonite) for that purpose. Thus, the patent specification states that an object of the invention is the use of a "cheap and readily available clay bonding material," and that "the non-swelling colloidal montmorillonite which I prefer to use in my mold composition is obtainable more cheaply in the eastern part of the country than is Wyoming bentonite." The specification further states that

"* * * Mold compositions containing a clay binder of Wyoming bentonite, which are of repute for possessing the combination of high dry strength, high hot strength and high sintering point, cannot compare in performance with my composition at working temperatures in the neighborhood of 2500°F. * * *

* * * * * *

"* * * The clay [montmorillonite] does not swell to any marked degree in the presence of tempering water and this is one major advantage distinguishing it from other clays such as Wyoming bentonite, which is identified by its swelling characteristics."

In view of the above express statements as to the inferiority of western bentonite, we are of the opinion that the Dietert patent cannot properly be said to suggest the desirability of using that material in combination with silica sand and silica flour as a molding composition. The patent clearly indicates that the use of the montmorillonite clay described and claimed constitutes an improvement over the prior compositions which contained western bentonite, and accordingly no one seeking to practice the patented invention would be likely to give such bentonite any further consideration. Under such circumstances, the broad reference to the possibility of using other clays cannot properly be considered as suggesting the use of western bentonite.

The board also stated that it appears from the tenor of appellants' specification that the joint use of silica sand, silica flour, and western bentonite "represents the prior art and the appellants' invention resides in the substitution of olivine flour for the silica flour in a mixture of this type." It is true that appellants' specification contains a statement that silica flour has frequently been used as an ingredient of foundry compositions, but that can scarcely be taken as an admission that it has been combined with silica sand and western bentonite. It amounts to no more than an acknowledgment of what is disclosed in the Dietert patent. Appellants' specification also gives data on comparative tests of a mold composition consisting of silica sand, western bentonite, and silica flour, and a similar composition consisting of silica sand, western bentonite, and olivine flour, but the mere making of such a comparison does not constitute an admission that the former composition was old.

Appellants' specification clearly contains no express admission that the joint use of silica sand, silica flour, and western bentonite is old, and we are of the opinion that it contains nothing from which such an admission may be fairly implied. It follows that such a composition cannot properly be considered to be part of the prior art against appellants' application.

Moreover, even assuming the composition last described to be old, it would not anticipate any of the appealed claims, all of which are limited to the use of olivine flour.

The Patent Office tribunals relied upon the British patent to Goldschmidt as disclosing the use of olivine flour in a molding composition. That patent discloses a molding composition composed of comparatively coarse particles of olivine bonded with clay. The patent states that a mold made of such material may be lined with a paste made of fine particles of olivine, and notes that such a mold has an advantage because of "the absence of minerals causing silicosis among foundry workers."

While the fine olivine particles described in the Goldschmidt patent may be considered as forming a flour, there is no

suggestion of mixing such a flour with other materials, or even with the coarse olivine particles of which the mold is made. On the contrary, the patentee takes pains to separate the fine and coarse particles and to use them in different portions of the mold.

Goldschmidt's mold was designed primarily for use in the molding of metals and alloys which will react with silica; and silica, therefore, is completely eliminated. Accordingly, the idea of a composition such as that claimed by appellants, consisting largely of silica sand, is entirely foreign to Goldschmidt's invention.

Similarly, Goldschmidt's reference to the elimination of the silicosis hazard is based on the "absence of minerals causing silicosis among foundry workers, for example quartz," whereas appellants' composition consists principally of silica sand, which is a form of quartz. The Goldschmidt patent contains no recognition of the fact that it is the fine particles of silica which constitute the principal silicosis hazard and that silica sand may safely be used if fine particles in the form of silica flour are eliminated.

For the reasons given, we are of the opinion that the Goldschmidt patent fails to suggest the use of olivine flour as an ingredient of silica sand molding compositions. Moreover, the Dietert patent, which the board combined with Goldschmidt in rejecting the appealed claims, definitely indicates that silica flour is not used solely for its mechanical properties, but that it reacts chemically with the other ingredients. Thus the patent states that

> " * * * It is quite likely that the silica flour reacts with clay constituents to form refractory silicates. These silicates also possess cementing properties which possibly account for the greater hot strength of mold obtained. * * *"

Since silica flour is relied on for its chemical action, it would not be obvious that olivine flour, which differs materially from silica flour chemically, would form an acceptable substitute for it in Dietert's composition.

While the prior art shows that silica sand, western bentonite, and olivine are all old ingredients in molding compositions, it does not suggest the use of those ingredients in a single composition in the proportions stated in the appealed claims. Appellants' specification clearly indicates that the claimed composition has definite advantages, not only in reducing the silicosis hazard, but in improving other properties of the composition, and it was conceded by the board that "the properties of the claimed composition are superior to those of the composition disclosed in Dietert." Since appellants have produced a substantially improved composition by making an unobvious combination of ingredients, the appealed claims should have been allowed.

The decision of the Board of Appeals is reversed.

Reversed.

JACKSON, J., retired, recalled to participate in place of COLE, J.

RICH, Judge (concurring, in which JACKSON, J., joins).

I agree that the rejection of the claims should be reversed but my view of the prior art is this:

The Dietert reference clearly teaches a molding sand composed of silica sand, bentonite and silica flour in the proportions claimed. The first two ingredients are conventional. This reference teaches the addition of silica flour to overcome disadvantages in using cheaper and more readily available clays than bentonite, such as montmorillonite, but, far from precluding the use of bentonite, he concludes his specification by saying in effect that any clay suitable for foundry use may be used.

The British Goldschmidt patent, however, fails to suggest the substitution of olivine flour for the silica flour in the Dietert patent composition. It teaches the use of a mold body made entirely of granular olivine, from which fines in the

**750**

flour category have been carefully removed, and bound with a suitable clay such as bentonite. His mold contains no silica sand at all. The fines he has removed, or fines otherwise produced and fine enough to be called flour, are then made into a slurry and painted on the mold as a facing. I do not see how this would suggest the incorporation of olivine flour in a silica sand and bentonite molding composition.

I regard the avoidance of the silicosis hazard as merely an obvious advantage attendant upon the avoidance in the foundry of materials which produce it. While this occupational hazard may have been an incentive which led to the making of the invention, I cannot see that it should be taken into account in determining patentability. Applicant has not discovered either the cause of nor a cure for silicosis. Patentability should not be predicated to any degree on the fact that olivine does not cause silicosis for the further reason that this fact is disclosed by Goldschmidt.